IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GENE McLENITHAN JR.,

        Plaintiff,

v.

MAX WILLIAMS, et al.,

        Defendants.

Civil No. 3:09-cv-00085-AC

OPINION AND ORDER

GENE McLENITHAN JR.
SID #8404164
Snake River Correctional Institution
777 Stanton Blvd.
Ontario, OR 97914

        Plaintiff *Pro Se*

ELLEN F. ROSENBLUM
Attorney General
ANDREW W. HALLMAN
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301

        Attorneys for Defendants

1 - OPINION AND ORDER -

ACOSTA, Magistrate Judge.

Plaintiff, an inmate at the Snake River Correctional Institution ("SRCI"), brings this civil rights action *pro se*. Currently before the Court are Plaintiff's Motion for Summary Judgment (#39) and Defendants' Cross-Motion for Summary Judgment (#77). The parties to this action have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with 28 U.S.C. § 636(c). For the reasons that follow, the Court DENIES Plaintiff's Motion for Summary Judgment (#39) and GRANTS Defendants' Cross-Motion for Summary Judgment (#77).

## FACTUAL BACKGROUND

Plaintiff is an incarcerated person who has been housed at SRCI under the Oregon Department of Corrections ("ODOC") since October 2000. Plaintiff identifies himself as a Seventh Day Adventist and a "spiritual Jew" who practices Judaism as a second religion. Plaintiff asserts his faith requires him to eat foods as set out in the Bible in Leviticus, Verses 3:17, 5:3, and 11:2-47, and Deuteronomy, Verse 14:21. Plaintiff asserts he must eat a Kosher diet, and, therefore, requested Defendants to provide him with Kosher meals.

ODOC inmates have three dietary options. The first option is "mainline fare," which includes meat and dairy. (Donald Charlton Declaration ¶ 14.) The second option is the "meat-alternative tray," which contains no meat, and for which the dairy components of the tray are optional. (Charlton Decl. ¶ 14.) The meal consists of rice, beans, fresh fruit and vegetables, and bread. (Charlton Decl. ¶ 14.) The third option is the kosher diet, which consists of packaged frozen kosher entrees from vendors and supplemental kosher menu items. (Charlton Decl. ¶¶ 15-16.)

The meat-alternative tray is designed to meet the needs of religious adherents who decline to eat meat or the unclean foods identified in Leviticus. (Charlton Decl. ¶ 14.) The kosher diet is designed to meet the requirements of the Jewish law of kashrut. (Charlton Decl. ¶¶ 15, 16.)

The meat-alternative option is provided for Seventh Day Adventists who practice a "healthy diet." (Charlton Decl. ¶ 14.) Defendants contend that consultants and religious experts agree that the meat-alternative tray is appropriate to meet Seventh Day Adventist beliefs. (Dennis Holmes Declaration ¶ 10-11; Tom P. O'Connor Declaration ¶¶ 20-25; Martin Jaffee Affidavit ¶¶ 18-19; Jacques Doukhan Declaration ¶¶ 6, 15; Alden Thompson Affidavit ¶ 54.)

The kosher diet is provided for those who follow the Oral Tradition of Judaism. (Jaffee Aff. ¶¶ 6-8). Plaintiff does not follow the Oral Tradition of Judaism and is not familiar with its origin or contents. (Plaintiff's Deposition, pp. 21, 22, 26, 48, 57, 67, 78; Jaffee Aff. ¶ 7; Thompson Aff. ¶¶ 34-37.) Defendants note that Plaintiff purchases numerous unhealthy and non-kosher items from the prison canteen. (Holmes Decl. ¶ 40, Att. 13; Pl. Dep. pp. 134, 135, 137).

Plaintiff contends that he has a sincere religious belief that as a Seventh Day Adventist and one who practices Judaism that he must have a kosher diet. While Plaintiff admits purchasing non-kosher items from the prison canteen, when asked if he consumed those items Plaintiff declined to answer because he did not wish to incriminate himself for violating prison rules against sharing canteen items with other inmates.

Plaintiff contends that some adherents of Seventh Day Adventism and Judaism abstain from the unclean foods identified in Leviticus. Plaintiff denies that a "kosher diet" is one that follows the Jewish law of kashrut which dictates methods of food preparation. Plaintiff further denies that

3 - OPINION AND ORDER -

ODOC inmates may select healthy items and avoid "unclean" foods through the mainline and meat-alternative tray selections.

ODOC first established Administrative Rules for the provision of kosher food in 1998. (Tamara Dohrman Declaration ¶ 4). Over time, ODOC utilized a variety of methods and vendors to provide kosher meals. (Dohrman Decl. ¶ 4). Initially, ODOC implemented procedures to ensure that the meat-alternative tray could be made kosher within the existing kitchens at ODOC institutions, but it proved too difficult. (Dohrman Decl. ¶¶ 5-9). As such, the decision was reached to develop kosher menus that are a combination of pre-packaged entrees and supplemental menu items. (Dohrman Decl. ¶ 9). ODOC officials considered purchasing kosher meals from the State of Washington, which operated kosher kitchens in their institutions, and also considered opening a kosher production kitchen in one of ODOC's major institutions. (Dohrman Decl. ¶ 11, 12). Both options proved cost-prohibitive, so the decision was made to procure pre-packaged kosher entrees from a private vendor. (Dohrman Decl. ¶ 13).

Defendants offer evidence that ODOC would incur substantial additional costs if required to provide kosher meals to any inmate who requested one on religious grounds. The cost per inmate, per day, to provide non-kosher meals from the mainline option, which includes both the mainline potion and the meat alternative tray, is $2.35. (Tamara Dohrman Declaration ¶ 49). By contrast, the average cost per inmate, per day to supply kosher meals is $7.99. (Dohrman Decl. ¶ 43). This figure includes only the costs of kosher food products, which are the kosher entrees and supplemental kosher items such as bread, and the kosher cafeteria supplies. (Dohrman Decl. ¶ 43). The provision of a religiously and nutritionally sufficient kosher diet to one inmate costs ODOC

an additional $4,117.20 per biennium. (Dohrman Decl. ¶ 50.) ODOC currently spends an additional $266,466.00 per biennium to provide kosher food to the 55 inmates currently approved for a kosher diet. (Dohrman Decl. ¶ 52).

Based upon a survey conducted by ODOC personnel, Defendants estimate approximately 36% of Seventh Day Adventist ODOC inmates would request a kosher diet, if offered. (Paul Belatty Declaration ¶ 17.) Additionally, 41% of Muslim inmates and 12% of ODOC inmates of other religious faiths would request the kosher diet if it was available to them. (Belatty Decl. ¶¶ 17, 19, 22). While ODOC does not keep official religious statistics on inmates, over 1700 inmates attended at least one Seventh Day Adventist service in one year, and 512 inmates attended at least one Muslim service. (Belatty Decl. ¶ 17, 19, 22). If 100 additional inmates request a kosher diet, the cost to ODOC would be $411,720.00 per biennium. (Dohrman Decl. ¶ 52).

## LEGAL STANDARDS

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or

conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. Fed. R. Civ. P. 56(c). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

////

////

////

////

## DISCUSSION

Plaintiff alleges four claims for relief:[1] (1) Defendants are violating his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc1(a)(1)(2) ("RLUIPA"); (2) Defendants are violating Plaintiff's First Amendment right to free exercise of religion; (3) Defendants are violating Plaintiff's Fourteenth Amendment equal protection rights; and (4) Defendants are knowingly and intentionally being deliberately indifferent to Plaintiff's sincere religious need. By way of remedy, Plaintiff seeks injunctive relief requiring Defendants to supply Plaintiff with Kosher meals. Plaintiff also seeks money damages.[2]

Defendants contend the dietary practices of the Seventh Day Adventist faith are met by the vegetarian option provided by ODOC. They further argue Plaintiff's request reflects a secular personal preference cloaked as a religious belief. Defendants contend that allowing such requests to draw on limited resources threatens ODOC's ability to provide much-needed services as well as security for both staff and inmates.

I.  RLUIPA

Plaintiff asserts Defendants' refusal to provide him with a Kosher diet violates his rights under RLUIPA. RLUIPA provides, in pertinent part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" unless the government establishes

---

[1]Plaintiff's Amended Complaint alleges five separate claims for relief, however, the fourth and fifth claims are both based upon the alleged denial of Plaintiff's equal protection rights and are combined for ease of reference herein.

[2]The Supreme Court has held that RLUIPA does not authorize a suit for damages against state employees. *Sossamon v. Texas*, 563 U.S. 277, 292 (2011).

7 - OPINION AND ORDER -

the burden is "in furtherance of a compelling government interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a).

The Ninth Circuit has outlined three steps to determine whether an inmate can succeed on a claim under RLUIPA. First, the plaintiff must identify what "religious exercise" was purportedly infringed. *Green v. Solano County Jail*, 513 F.3d 982, 987-88 (9th Cir. 2008). Second, the plaintiff must show that "the prison regulation at issue 'substantially burdens' that religious exercise." *Id*. A "substantial burden on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004)). Third, once the plaintiff has met his burden on the first two steps, the burden shifts to the defendant to prove that "the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Warsoldier*, 418 F.3d at 988 (citing 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)). To demonstrate that it is the least restrictive means, prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

### A. Existence of a Substantial Burden on Plaintiff's Religious Exercise

Plaintiff bears the burden of coming forward with evidence demonstrating the first two steps of a claim under RLUIPA, *i.e.*, that the state's action or policy constituted a substantial burden on his exercise of religion. *Warsoldier*, 418 F.3d at 994-95. The focus of this initial inquiry necessarily is on the manner in which a plaintiff's religious exercise is impacted, rather than on the reasonableness of the facility's policy or regulation. *Id*.

"Religious exercise," for RLUIPA purposes, includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *San Jose Christian College*, 360 F.3d at 1034. "This definition reveals Congress' intent to expand the concept of religious exercise contemplated in traditional First Amendment jurisprudence." *Lewis v. Ryan*, 2008 WL 1944112, *28 (S.D. Cal., May 1, 2008) (citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003), *cert. denied*, 541 U.S. 1096 (2004)). A prisoner's request for an accommodation must, nonetheless, be "sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2774 n.28 (2014)).

When determining the content of a religious belief, including how and to what extent its attendant exercise may be burdened, however, the court defers to the plaintiff's understanding of what his faith requires of him because "[c]ourts are not arbiters of scriptural interpretation." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 716 (1981). So long as a religious adherent has drawn a line based on "an honest conviction," "it is not for us to say that the line he drew was an unreasonable one." *Id.* at 715-16.

The RLUIPA does not define what constitutes a "substantial burden" on religious exercise. The Ninth Circuit has noted, however, that a "substantial burden" on "religious exercise" is one that imposes "a significantly great restriction or onus upon such exercise." *San Jose Christian College*, 360 F.3d at 1034.

Plaintiff has established his belief that he must eat a Kosher diet is sincerely held and is rooted in his religious beliefs as a Seventh Day Adventist. The broad definition in RLUIPA of

"religious exercise" includes Plaintiff's beliefs, and it matters not under RLUIPA that a kosher diet may not be "compelled by or central to" the Seventh Day Adventist faith. *Lewis*, 2008 WL 1944112 at *29 (citing *Shakur v. Shriro*, 514 F.3d 878, 888 (9th Cir. 2008)).

Defendants contend that Plaintiff is seeking a kosher diet for reasons other than his religious beliefs. They present evidence that Plaintiff initially complained he did not care for the vegetarian diet because there was insufficient variety and the beans were not well-cooked. (Holmes Decl. ¶ 27, Att. 25.) Defendants say Plaintiff originally offered no religious explanation for his desire to eat a kosher diet instead of the vegetarian diet. (Holms Decl. ¶ 27, Att. 25). Defendants also contend that Plaintiff's purchases of non-kosher food items from the prison commissary show that his need for a kosher diet is not a sincerely held religious belief.[3] While Plaintiff's statement of additional reasons for requesting kosher meals and his purchases of foods inconsistent with a kosher diet would likely impact a jury deciding the sincerity of his religious belief, it cannot be said as a matter of law that his religious beliefs are insincere. *Curry v. California Department of Corrections*, 2013 WL 75769, *7 (N.D. Cal., Jan. 4, 2013), *aff'd* 616 Fed. Appx. 265 (9th Cir. 2015).

## B. Compelling State Interest

Once a plaintiff meets the initial burden of showing a substantial burden on his exercise of religion, the burden shifts to the government to show the furtherance of a "compelling" government interest and that it achieves the compelling interest by the least restrictive means. 42 U.S.C. §

---

[3] While Defendants contend Plaintiff admitted eating the non-kosher food items, Plaintiff also strongly insinuated that the purchases were made for other inmates, a practice Plaintiff declined to admit because such practice is a violation of prison rules.

10 - OPINION AND ORDER -

2000cc-1(a); *Shakur*, 514 F.3d at 889. If the defendants are able to meet that standard, regardless of the burden imposed on plaintiff's religious exercise, the burden is permitted under RLUIPA. *Greene*, 513 F.3d at 990.

"That a compelling state interest is required by the RLUIPA does not mean that courts should no longer give substantial deference to the decisions of prison administrators." *Linehan v. Crosby*, 2008 WL 3889604 at * 8 (N.D. Fla., Aug. 20, 2008), *reconsideration denied by* 2008 WL 6892596, *aff'd by* 346 Fed. Appx. 471 (11th Cir. 2009). Context matters in the application of the standard, and it should be applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

Defendants have presented evidence establishing a compelling interest in limiting kosher diets to Jewish inmates, and this policy, in conjunction with ODOC's accommodation of traditional Seventh Day Adventist dietary practices, is the least restrictive means of meeting that interest. The evidence is undisputed that providing kosher meals costs $4,117.20 more per biennium for each additional inmate who requests kosher food. To be sure, the cost of accommodating Plaintiff alone is not significant. However, if Plaintiff were to be accommodated by providing the kosher meal option, other inmates will likely have to be accommodated as well, ultimately at great expense to ODOC. Indeed, Defendants provide evidence that if non-Jewish inmates were allowed the option of choosing the kosher meal plan, a substantial percentage would likely do so. Finally, the Court considers the substantial additional cost of providing kosher meals to non-Jewish inmates in the

11 - OPINION AND ORDER -

context of ODOC's overall budget. Defendants provide evidence that ODOC's security budget is strained. (Morton Aff. ¶ 12).

Courts have generally recognized cost containment as a compelling state interest under RLUIPA. *See Curry*, 2008 WL 75769 at *9 (collecting cases recognizing cost containment as compelling interest). The substantial additional cost of kosher food to ODOC is a compelling interest in not providing kosher food to non-Jewish inmates, and the provision of the meat-alternative tray is the least restrictive means of furthering this interest.

## II.  First Amendment Free Exercise

"Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *Shakur*, 514 F.3d at 883 (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur*, 514 F.3d at 883–84 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

Prisons may adopt regulations and restrictions that potentially impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974). *Turner* introduced a four-factor test to resolve prison regulation-based disputes. That test applies in the context of a claimed burden on a prisoner's right to the free exercise of religion. *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2008) ("*Turner* [ ] . . . governs inmate free exercise claims brought under the First Amendment").

> The four-factor *Turner* test considers:
>
> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective, (2) whether there are alternative avenues that remain open . . . to exercise the right, (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) (citing *Turner*, 482 U.S. at 89)). Courts evaluate the policies of a jail or prison with "due regard for the 'inordinately difficult undertaking' that is modern prison administration," recognizing that "certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner*, 482 U.S. at 85). Further, the judgment of correctional officials is entitled due deference, especially when plaintiff provides no contrary evidence. *See Pell v. Procunier*, 417 U.S. 817, 827 (1974) (judgment of correctional officials in security matters is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters").

### A.    Rational Relationship

With respect to the first *Turner* factor, the evidence shows a rational and valid connection between ODOC's religious diet program and a legitimate governmental interest. The "orderly administration of a program that allows . . . prisons to accommodate the religious dietary needs of thousands of prisoners" is a legitimate governmental interest. *Resnick v. Adams*, 348 F.3d 763, 769 (9th Cir. 2003); *see also Sefeldeen v. Alameida*, 238 F. Appx. 204, 206 (9th Cir. 2007) ("the

13 - OPINION AND ORDER -

legitimate governmental interest is to reasonably accommodate thousands of inmates' religious dietary needs while also considering budgetary, staff, and security limitations"). There is a valid rational connection between prison officials' refusal to provide kosher meals to a person of the Seventh Day Adventist faith and the prisons' legitimate budgetary concerns. *See Shakur*, 514 F.3d at 878 (prison could rationally conclude that denying kosher diet to a Muslim inmate would simplify its food service and reduce expenditures). The first *Turner* factor weighs in favor of Defendants.

### B.     Alternative Means

The second *Turner* factor is "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 89-90. The relevant inquiry under the second *Turner* factor is "not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather [it is] whether the inmates have been denied all means of religious expression. *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993) (quoting *O'Lone*, 482 U.S. at 352), *cert. denied*, 510 U.S. 1192 (1994).

Plaintiff has numerous alternate means to exercise his religion. In addition to the religious vegetarian diet, ODOC makes many accommodations for Seventh Day Adventists. (Holmes Decl. ¶ 9). Adventist services run by volunteer Adventist pastors from the community are generally offered weekly on Saturdays, and mid-week Bible studies are offered to Adventist inmates when available. (Holmes Decl. ¶ 9). Seventh Day Adventists may also practice their religion through in-cell prayer and discussions with other adherents, and may keep Bibles in their cells and receive visits from pastors. (Homes Decl. ¶ 9). Seventh Day Adventists also are not required to work their

14 - OPINION AND ORDER -

job assignments on Saturdays. (Homes Decl. ¶ 9). As such, numerous alternate avenues are available to Plaintiff to engage in religious exercise.

Also relevant to the second *Turner* factor is whether the policy requires the prisoner to do something forbidden by his religion rather than be unable to do something that is a positive expression of his belief. *Ward*, 1 F.3d at 878. On this point, Plaintiff's evidence is mixed. Defendants present evidence from Seventh Day Adventist authorities that the meat-alternative tray offered by ODOC satisfies the directive from Leviticus to maintain a healthy diet. (Doukhan Decl. ¶¶ 4, 7; Thompson Aff. ¶¶ 18-19). Plaintiff counters that his interpretation of Leviticus and his practice of secular Judaism requires that his diet not only be vegetarian, but that the food be prepared under kosher laws.

Assuming for the present purposes that non-kosher food is forbidden, the second *Turner* factor weighs very slightly in Plaintiff's favor. It does not weigh more heavily because Plaintiff retains the opportunity to engage in other Seventh Day Adventist practices.

### C.  Adverse Impact

The third *Turner* factor requires the Court to consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.*

As discussed in the context of Plaintiff's RLUIPA claim above, accommodating Plaintiff's request for a kosher diet would negatively affect the resources for other prisoners' food service, as

the evidence shows the cost of providing kosher meals is significantly higher than the mainline or meat-alternative trays. The evidence is also undisputed that providing the kosher meals to inmates of faiths other than Judaism would prompt more requests for kosher meals and the attendant increase in costs. The third *Turner* factor weighs in favor of Defendants.

### D.   Ready Alternatives

The fourth *Turner* factor requires the Court to consider whether there is an "absence of ready alternatives" to the prison policy. *Turner*, 482 U.S. at 90. The burden is on the prisoner challenging the regulation to show that there are obvious, easy alternatives to the regulation. *O'Lone*, 482 U.S. at 350; *Mauro v. Arpaio*, 188 F.3d 1054, 1063 (9th Cir. 1999), *cert. denied*, 529 U.S. 1018 (2000).

Plaintiff contends that the kosher diet Defendants already provide to Jewish inmates would satisfy Plaintiff's religious requirements. As noted above, Defendants provided evidence that if a kosher meal were offered to inmates of religious faiths other than Jewish, the number of inmates who would request to participate would likely be substantial. Moreover, Defendants provide evidence that substantial additional costs would be incurred if ODOC were required to provide a kosher meal to any inmate who requested one. Defendants satisfy the fourth *Turner* factor.

Having considered the four *Turner* factors, the Court concludes Plaintiff does not raise a triable issue of fact that his right to free exercise of religion was improperly impinged upon by Defendants. Defendants are entitled to summary judgment in their favor on Plaintiff's First Amendment claim.

### III. Fourteenth Amendment Equal Protection

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur*, 514 F.3d at 890 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The preliminary inquiry in an equal protection claim is identifying the plaintiff's relevant class, which is "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotations omitted). Then, "a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *cert. denied*, 543 U.S. 825 (2004). Because the claim requires proof of intentional discrimination, "[m]ere indifference" to the unequal effects on a particular class does not establish discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

Within the prison context, the Constitution's equal protection guarantees do not entitle each religious group within a prison to "identical treatment and resources." *Hartmann v. Cal. Dep't of Corrs. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). When differential treatment is reasonably related to legitimate penological interests under the *Turner* factors, no equal protection claim lies. *Shakur*, 514 F.3d at 891. Although prisons must make "good faith accommodations" to all inmates to practice their religious beliefs, they satisfy this obligation where, whatever the differences between the groups, each inmate has a "reasonable opportunity of pursuing his faith" during his term of incarceration. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85.

Plaintiff contends Defendants denied him Equal Protection by providing a kosher diet to Jewish prisoners, but failing to provide such a diet to him. The fact that Jewish inmates are provided a kosher diet is not alone sufficient to show an equal protection violation. *Curry*, 2008 WL 75769 at *16. Moreover, the same *Turner* analysis that requires rejection of Plaintiff's First Amendment claim requires rejection of his equal protection claim. The legitimate penological interests of cost control justify the decision not to provide kosher meals to non-Jewish inmates. Having considered the four *Turner* factors, the Court concludes Plaintiff does not raise a triable issue of fact that his right to equal protection was improperly impinged upon by Defendants.

## IV.    "Deliberate Indifference"

Plaintiff alleges Defendants are "knowingly and intentionally being deliberately indifferent to Plaintiff's sincere religious need."[4] "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care" and "must take reasonable measures to guarantee" their personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). The Eighth Amendment proscribes the imposition of cruel and unusual punishments "extending beyond physically barbarous punishments." *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Hutto v. Finney*, 437 U.S. 678, 685 (1978) (conditions in isolation cell); *see also Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979) (outdoor exercise deprivation and unwarranted use of tear gas).

---

[4]Defendants do not address Plaintiff's claim of deliberate indifference. Under 28 U.S.C. § 1915(e)(2)(ii), however, the Court shall dismiss a claim brought by a prisoner proceeding *in forma pauperis* if at any time the court determines the prisoner fails to state a claim upon which relief may be granted.

Nevertheless, conditions of confinement may, consistent with the Constitution, be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A plaintiff can establish an Eighth Amendment constitutional violation only when "both the objective and subjective components of a two-part test" are satisfied. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)). First, the deprivation alleged must be, objectively, sufficiently serious, that is, implicates the "minimum civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The second requirement is subjective and follows from the principle that only the unnecessary and wanton infliction of pain or a condition of confinement that offends decency implicates the Eighth Amendment. To satisfy the second element, a prison official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 ("[i]n prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety").

Plaintiff alleges no physical injury and no serious deprivation satisfying the objective element of an Eighth Amendment claim (no want infliction of pain, no threat to his health or safety, or any other indecent condition of confinement, singly or in combination) associated with the denial of kosher meals. Because Plaintiff fails to satisfy the objective prong of an Eighth Amendment violation, the Defendants' state of mind is not at issue. *See Davis v. Flores*, 2010 WL 2673458, *16 (E.D. Cal., July 2, 2010), *aff'd by* 484 Fed. Appx. 108 (9th Cir. 2012).

V. **Qualified Immunity**

Defendants are entitled to qualified immunity against the First and Fourteenth Amendment claims with regard to the religious diet. The defense of qualified immunity protects government

19 - OPINION AND ORDER -

officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the Court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier's* requirement that qualified immunity analysis proceed in a particular sequence). "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Here, the evidence fails to show a violation of Plaintiff's First or Fourteenth Amendment rights. Therefore, Defendants prevail on the first prong of the *Saucier* test. As a matter of law, Defendants are entitled to qualified immunity against the First and Fourteenth Amendment claims.

## CONCLUSION

For these reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (#39) and GRANTS Defendants' Cross-Motion for Summary Judgment (#77). This action is DISMISSED.

DATED this ___ day of April, 2016.

John V. Acosta
United States Magistrate Judge